UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| HOMER McDOWELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.: 3:08-CV-90 |
| | ) | (VARLAN/SHIRLEY) |
| DAVOL, INC., C.R. BARD, INC., | ) | |
| BLOUNT MERMORIAL HOSPITAL, | ) | |
| JOHN R. REISSER, MD., and EAST | ) | |
| TENNESSEE MEDICAL GROUP, P.C., | ) | |
| | ) | |
| Defendants. | ) | |

## **MEMORANDUM AND ORDER**

This civil action is before the Court on plaintiff's Motion to Remand to State Court [Doc. 6]; defendant Blount Memorial Hospital, Inc.'s ("Blount Memorial Hospital") Motion to Remand to State Court [Doc. 7]; and defendants Defendants Davol Inc. ("Davol") and C.R. Bard, Inc.'s ("Bard") Request of Oral Argument on Issue of Remand [Doc. 11]. Plaintiff originally filed a complaint against defendants in the Circuit Court for Blount County, Tennessee. [*See* Doc. 1-2]. Defendants Davol and Bard timely removed the case to this Court pursuant to 28 U.S.C. § 1441, claiming that plaintiff fraudulently joined the non-diverse defendants, and arguing that this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because, excluding the fraudulently joined parties, there is diversity of citizenship and the amount in controversy exceeds the Court's jurisdictional minimum. [*See* Doc. 1].

The Court has reviewed the pleadings and arguments, and for the reasons discussed herein, plaintiff's and defendant Blount Memorial Hospital's motions will be granted and the case will be remanded to the Circuit Court for Blount County, Tennessee. Additionally, because oral argument on the issue was not necessary, defendants Davol and Bard's motion for oral argument will be denied.

I.  **Relevant Facts**

As the Court is required to do on a motion to remand, all questions of fact and ambiguities in the law will be resolved in favor of the non-removing party. *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999) (quoting *Alexander v. Elec. Data Sys. Corp.*, 13 F.3d 940, 949 (6th Cir.1994)).

Plaintiff, Homer McDowell, is a citizen of the state of Tennessee. [Doc. 1-59.[1]] Defendant Davol is incorporated and has its principal place of business in Rhode Island. [*Id.*] Defendant Bard is incorporated under the laws of New Jersey. [*Id.*] Defendants Blount Memorial Hospital, John R. Reisser, M.D., and East Tennessee Medical Group, P.C. (collectively "non-diverse defendants" or "healthcare defendants") are citizens of Tennessee. [*Id.*]

---

[1]This document appears to be plaintiff's motion to file a third amended complaint with the proposed third amended complaint attached that was filed in the Circuit Court for Blount County, Tennessee. It is not clear to this Court whether the state court granted this motion and if this complaint was ever properly filed. However, because defendants cite plaintiff's third amended complaint in their response to the motion to remand, the Court will consider whether plaintiff has stated a claim against the non-diverse defendants on the basis of this document. Additionally, the third amended complaint and second amended complaint do not appear to be so different that the Court's analysis would change were it to rely on the second amended complaint.

Plaintiff filed a complaint in the Circuit Court of Blount County, Tennessee alleging various causes of action that relate to plaintiff's injuries associated with his hernia repair operation. [*See id.*; *see also* Doc. 1-11 (original complaint).] This hernia repair operation occurred on November 27, 2006 at defendant Blount Memorial Hospital. [Doc. 1-59.] The surgery was performed by defendant Dr. Reisser, who was then an employee of defendant East Tennessee Medical Group, P.C. [*Id.*] Andy Bolton, a representative of defendant Bard was present in the operating room during plaintiff's surgery. [*Id.*]

During plaintiff's operation a hernia mesh patch, the Composix ® Kugel Mesh patch ("Kugel Patch"), was implanted into his body. [*Id.*] The Kugel Patch was manufactured by Davol. [*Id.*] Bard, as the parent company of Davol, participates in the manufacture and distribution of the Kugel Patch. [*Id.*] Plaintiff alleges that the type of Kugel Patch inserted into his body had been recalled on March 31, 2006.[2] [*Id.*] Plaintiff experienced problems related to the surgery, including that the site where the patch was inserted never closed and that part of the patch protruded through the opening. [*Id.*] As a result, plaintiff was required to undergo further surgery to remove the Kugel Patch and repair his bowel which had been damaged by the defective patch. [*Id.*]

---

[2]This fact is in dispute but for the purpose of this motion, the Court must resolve disputed facts in favor of plaintiff. The parties agree that the identifying information for the Kugel Patch implanted in plaintiff's body is product code of 0010208, lot number 43EQD232 or 43EQD842. Defendant presented a letter dated December 28, 2005 which suggests that patches with product code of 0010208, lot number 43EQD232 or 43EQD842 were not recalled at that time. [Doc. 8-2.] However, plaintiff presented a letter dated March 24, 2006 stating that all lot numbers for product code of 0010208, all lot numbers were recalled. [Doc. 1-59, Ex. 3.]

**II.     Analysis**

An action may be removed from state to federal court only if it could have been brought there in the first place; that is, if the federal court would have original jurisdiction over the case. 28 U.S.C. § 1441(a). A federal court has original subject matter jurisdiction over two types of actions. The first type, which is not applicable here, involves those actions raising a federal question. *See* 28 U.S.C. § 1331. The second type involves those actions where there is complete diversity of citizenship and an amount in controversy greater than $75,000, excluding costs and fees. *See* 28 U.S.C. § 1332.

The party removing an action to federal court has the burden of showing that the federal jurisdictional requirements are satisfied. *See Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 158 (6th Cir. 1993). "When an action is removed based on diversity, we must determine whether complete diversity exists at the time of removal. Indeed, '[d]iversity jurisdiction attaches only when all parties on one side of the litigation are of a different citizenship from all parties on the other side of the litigation.'" *Coyne*, 183 F.3d at 492 (citations omitted).

In defendants Davol and Bard's notice of removal, they argue that removal is proper on the basis of diversity jurisdiction despite the three non-diverse defendants because plaintiff fraudulently joined each of those defendants and the claims against those defendants did not arise out of the same transaction or occurrence as the claims against Davol and Bard. [*See* Doc. 1.] Plaintiff seeks remand arguing that non-diverse parties were not fraudulently joined and the claims arise out of the same transaction or occurrence, and therefore, there is not complete diversity. [*See* Doc. 6]. Defendant Blount Memorial Hospital moves for

4

remand arguing that this Court does not have jurisdiction over plaintiff's claim against it because, as a government entity, it is immune from suit except as strictly construed by the Tennessee Governmental Tort Liability Act ("TGTLA"), which mandates that the Circuit Court of Blount County, Tennessee has exclusive jurisdiction over the matter. [*See* Doc. 7.]

Defendants Davol and Bard respond in opposition to both motions to remand, reiterating their arguments that plaintiff's joinder of the non-diverse defendants was improper because the complaint fails to provide a factual and legal basis for this Court to conclude that Tennessee law will support liability against them and that plaintiff's claims against the non-diverse defendants arise out of transactions or occurrences which are separate and apart from the transactions or occurrences out of which plaintiff's claims against Davol and Bard arise. [*See* Doc. 8]. Plaintiff filed a reply arguing that he has stated a claim against the Tennessee defendants and the that events giving rise to his claims against all defendants arise out of the same transaction or occurrence. [*See* Doc. 9.] Defendant Blount Memorial Hospital filed a reply arguing that it is not proper for this Court to consider whether joinder of in-state defendant was appropriate under Tennessee's joinder rules. [*See* Doc. 10.]

A.  **Fraudulent Joinder**

A plaintiff cannot defeat diversity of citizenship by fraudulently joining non-diverse parties against whom plaintiff does not have a cause of action. *Coyne*, 183 F.3d at 493 (citing *Alexander*, 13 F.3d at 949). "To prove fraudulent joinder, the removing party must present sufficient evidence that a plaintiff could not have established a cause of action against non-diverse defendants under state law." *Coyne*, 183 F.3d at 493 (citing *Alexander*, 13 F.3d

at 949). In determining whether plaintiff has presented a cause of action against the non-diverse defendants, the court must resolve all questions of fact and law in plaintiff's favor. *Coyne*, 183 F.3d at 493 (quoting *Alexander*, 13 F.3d at 949).

Plaintiff's claims against the non-diverse defendants are that they were negligent in their treatment of plaintiff during his hernia repair. To state a claim for negligence under Tennessee law, a plaintiff must allege: "(1) a duty of care owed by defendant to plaintiff; (2) conduct below the applicable standard of care that amounts to a breach of that duty; (3) an injury or loss; (4) cause in fact; and (5) proximate, or legal, cause." *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995). A plaintiff can create a rebuttable presumption of negligence by showing that his injury was caused by something in the defendant's exclusive control and that such an injury does not usually occur in the absence of negligence. Tenn. Code Ann. § 29-26-115(c).

Plaintiff claims that defendants John Reisser, M.D., East Tennessee Medical Group, PC, and Blount Memorial Hospital were negligent in performing his surgery and providing his care and treatment. [Doc. 1-59.] He alleges that these defendants knew or should have known, through the exercise of reasonable diligence, the status and danger of the Kugel Patch before they implanted it into his body. [*Id.*] Plaintiff also alleges that negligence should be presumed because he was under the exclusive control of defendants at the time of the onset of his injury and it is an injury that does not usually occur in the absence of negligence. [*Id.*] Plaintiff alleges that because of this failure to use reasonable care, plaintiff suffered harm. [*Id.*]

6

Defendants Davol and Bard base their argument of plaintiff's failure to state a cause of action against the healthcare defendants on the fact that the Kugel Patch implanted into plaintiff was never recalled. [*See* Doc. 8.] Plaintiff argues that whether the patch implanted in to plaintiff was subject to the recall is a disputed fact which must be resolved in plaintiff's favor. [Doc. 9.] Additionally, plaintiff specifically alleges that "regardless of whether the Kugel Patch was the subject of the recall" defendants conducted plaintiff's surgery, care, and treatment negligently. [Doc. 1-59.]

The Court finds that plaintiff sufficiently presents a cause of action against the non-diverse defendants by alleging a standard of care defendants owed to plaintiff, a breach of that standard, and that the breach of that standard was the cause in fact and proximate cause of harm to plaintiff. The Court is not persuaded by defendants' argument that the Kugel Patch used during plaintiff's surgery was not part of the recall. Plaintiff is correct that plaintiff and defendant dispute this fact, and to the extent that the Court must resolve this dispute, it must be resolved in favor of plaintiff. Additionally, plaintiff made a least one claim against the non-diverse defendants that is not contingent on the Kugel Patch having been recalled. Accordingly, the Court does not find that the healthcare defendants were fraudulently joined.

### B. Joinder on the Basis of the Claims Arising out of Same Transaction or Occurrence

Improper joinder can be found even if joinder was not fraudulent. *Crockett v. R.J. Reynolds Tobacco Co.*, 436 F.3d 529, 533 (5th Cir. 2006). The Federal Rules of Civil

Procedure allow permissive joinder of parties when the claims arise out of the same transaction or occurrence and there is a common question of law or fact. Fed. R. Civ. P. 20(a)(2). Defendants Davol and Bard do not argue that there is not a common question of law or fact but assert that the claims against the non-diverse defendants do not arise out of the same transaction or occurrence as the claims against defendants Davol and Bard. "The words 'transaction or occurrence' are given broad and liberal interpretation in order to avoid multiplicity of suits." *LASA Per L'Industria Del Marmo Societa Per Azioni v. Alexander*, 414 F.2d 143, 147 (6th Cir. 1969) (citations omitted); *see also Johnson v. United Parcel Serv., Inc.*, 2006 WL 686884, at *4 (E.D. Tenn. Mar. 16, 2006) (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966)) (noting that "joinder of claims, parties and remedies is strongly encouraged.").

Defendants Davol and Bard argue that the Court should treat this case as the district court did in *In re: Guidant Corp. Implantable Defibrillators Products Liability Litigation*, MDL. No. 05-1708, Civil No. 07-1129 (D. Minn. June 4, 2007). In *Guidant Corp.*, plaintiff asserted products liability claims against the manufacturers of a pacemaker implanted into his body on the basis of alleged manufacturing and design defects and failure to warn of risks and defects. [Doc. 8-3.] Plaintiff asserted medical malpractice claims against the non-diverse hospital on the basis of alleged medical negligence because it knew or had reason to know that the pacemaker was potentially defective and it did not advise plaintiff of these facts. [*Id.*] The court concluded that the hospital was improperly joined in the case because the malpractice claims did not involve common questions of law or fact nor did they arise

out of the same transaction or occurrence as the products liability claims. [*Id.*] Specifically, the court stated, "Any liability that may be found against either [the manufacturers] or [the hospital] would not be a basis for liability to the other. However, separate liability as to each could be separately found." [*Id.*]

Another district court resolving a similar issue reached the opposite conclusion in *Galati v. Eli Lilly & Co.*, finding that claims against a drug manufacturer for products liability related to a harmful drug and claims against a doctor for medical negligence in prescribing the drug arose out of the same series of transactions or occurrences. 2005 WL 3533387 (W.D. Mo. Dec. 22, 2005); *see also Copeland v. Eli Lilly & Co.*, 2005 WL 3533394 (W.D. Mo. Dec. 22, 2005) (companion case addressing the same issue); *Laurence v. Eli Lilly & Co.*, 2005 WL 3533401 (W.D. Mo. Dec. 22, 2005) (same); *Finley v. Eli Lilly & Co.*, 2005 WL 3533404 (W.D. Mo. Dec. 22, 2005) (same). The facts of *Galati* were similar to the case now before this Court in that Galati made mutually exclusive alternate arguments against his doctor and the manufacturers. 2005 WL 3533387, at *4. Galati argued that the manufacturer withheld information about the drug from his doctor and thus that his doctor has no knowledge or reason to know of the drug's dangerous effects. *Id.* Alternatively he argued that his doctor knew or should have known of the drug's dangerous effects but negligently prescribed the drug and failed to warn Galati of its health risks. *Id.* In reaching its conclusion, the *Galati* court stated:

> Who, if anyone, is liable for those injuries may turn on whether [the manufacturer] withheld information from [the doctor] or whether [the doctor] withheld information from Galati. Since [the doctor] could not have negligently withheld from Galati that

9

> which was withheld from him by [the manufacturer], the chain of communication-and any breaks in it-from the drug manufacturer to the patient is a common issue of fact. Moreover, whether [the doctor's] alleged failure to monitor or diagnose Galati's side effects was negligent may turn on what information he was given by [the manufacturer] about the drug's potential side effects.

*Id.* at *4. It was because of these common issues of fact that the court concluded that the claims arose out of the same transaction or occurrence.

Neither of these cases are controlling. However, in *LASA*, the Sixth Circuit reach a similar conclusion to that of the *Galati* court when addressing an analogous issue. 414 F.2d 143. It found that claims against a marble manufacturer and claims against the contractor and subcontractors using the marble were logically related and therefore could be permissibly joined as part of the same transaction or occurrence. *Id.* at 147. The court recognized the recurring question in the case was who was responsible for the problems with the marble used for a job and explained that "[m]any of the same or closely related factual and legal issues necessarily will be presented under the complaint, counterclaims and cross-claims in the resolution of [the] issues." *Id.*

Here, plaintiff generally alleges that defendants Davol and Bard are liable for failing to warn plaintiff and his doctors of the risks of the Kugel Patch and that the healthcare defendants are liable for failing to exercise due care during his surgery, care, and treatment for implantation of the patch. [Doc. 1-59.] Similar to *LASA*, there is a recurring question here regarding who is responsible for plaintiff's injuries that arose from the use of the Kugel Patch. Defendants Davol and Bard themselves admit that plaintiff's allegations against the non-diverse defendants link their conduct to the actions of Davol and Bard. [Doc. 8, at 4 n.1.]

10

Accordingly, the Court concludes that plaintiff's claims against the diverse and non-diverse defendants arise out of the same transaction or occurrence and were appropriately joined. Thus, there is not complete diversity of citizenship and this Court does not have subject matter jurisdiction over this case. The case will be remanded to the Circuit Court for Blount County, Tennessee.

### C. The TGTLA Provides Exclusive Jurisdiction for Claims Against a Government Entity

Because the Court is remanding this case to state court, it does not reach the issue of whether the Circuit Court has exclusive jurisdiction over plaintiff's claims against defendant Blount County Hospital.

### III. Conclusion

For the foregoing reasons, plaintiff's Motion to Remand to State Court [Doc. 6] and defendant Blount Memorial Hospital's Motion to Remand to State Court [Doc. 7] are hereby **GRANTED** in that this case is hereby **REMANDED** to the Circuit Court for Blount County, Tennessee. In light of the Court's ruling on the issue of remand without the need for oral argument, defendants Davol and Bard's Request of Oral Argument on Issue of Remand [Doc. 11] is hereby **DENIED**.

IT IS SO ORDERED.

    s/ Thomas A. Varlan
    UNITED STATES DISTRICT JUDGE